## SUPREME COURT—IN BANCO.

*Allen, Ch. J., Davis, J.*

### In re Will of Kalauhala.

PROBATE OF A WILL is not set aside except by very clear evidence of FRAUD.

LACK OF PROVISION FOR A DAUGHTER is no reason for refusing probate of the will.

·ADDITIONAL EVIDENCE on appeal is to be closely scrutinized.

ADDITIONAL EVIDENCE being admitted on appeal, according to Sec. 3 of the Act passed 31st December, 1864, entitled "An Act to authorize the trying of issues of fact in matters of Probate and Administration by a Jury," the Court was of opinion that all such additional testimony (tending to throw· discredit upon the authenticity of the instrument purporting to be a will), based upon the loose and unguarded conversation of the witnesses to the will, and of outside parties, should be cautiously watched, and ought not to prevail against direct and positive proof that the handwriting of the entire instrument and signature was that of the testator, and his competency also, being unquestioned.

By the Appellate Court, "In the matter of the proof of the will of the late Kalauhala, deceased," delivered by the Hon. Justice DAVIS, on appeal from the decision of Hon. Justice ROBERTSON, at Chambers, sitting as a Court of Probate.

The Court is asked to set aside the writing purporting to be the will, on various grounds which may be regarded as circumstantial: for example, one, that the party was in such feeble health at the time of the alleged execution of the will, that it is hardly probable that he could have made the effort to have written so long a document, especially at one sitting ; again, that the attendance of his near relatives, Kaale and Kahilahilanui, was so constant, either of one or the other,

during the period of his illness, from before, or about the time, and for long after the averred making of the instrument, without any knowledge on their part, or observation of the decedent having, at any time, been occupied in the preparation of such a writing, that another ingredient is added to induce the belief that it was never made; and again, that the conversations and declarations to outside parties of Kaha and Uhane, said to be witnesses of the will, (more particularly of Kaha, in one instance before, and in others after, the death of Kalauhala), are positive negations of the fact of such making by Kalauhala; added to these, the attention of the Court is directed to the signature of deceased to a certain subscription list, (the only comparative writing produced in evidence), to show a dissimilarity with the writing and signature offered by the petitioner for probate.

Let us review, briefly, the character of some of the testimony. The decedent, himself, has spent his whole life, since arriving at manhood, as a native lawyer, in the well-known acceptation of that term. He well knew the difference between dying intestate and leaving a will; as to how the former or latter course would operate in the disposition of his property after his death. As regarded his general intelligence, he stood as fairly in his profession as the majority of his countrymen who are admitted to practice before the courts. Kaha, the witness frequently called, and closely cross-examined, as to the leading facts of the execution and attestation of the will, is quite an old man, whose only pretension to any legal lore is that parents are not received as witnesses for matters like the present before the courts. Kaunamano, one of the principal witnesses relied on to discredit the testimony of Kaha, in the court below, speaks of meeting Kaha, but there said nothing of conversing with him about a will or "hooilinas." It is only in the Appellate Court that he testifies to the conversations, and that he had them with Kaha on two occasions. The Sunday after the

burial of Kalauhala, he was told by Kaha that no will was made, confirming as it were what Kaha had told him in the third week in December, previous to Kalauhala's death ; yet as he was not perhaps examined as to these facts, not a word of these conversations passes his lips at the first hearing of this case.

Kaiawahanui, the other witness alleged to have conversed with Kaha, in the court below, only speaks to meeting Uhane, the other witness to the will, and her reply that Kalauhala had no heirs. This conversation with Uhane was on the day Kalauhala died, but he says nothing of meeting Kaha. In this Court, he speaks only of his interview with Kaha on the evening of the funeral, and that Kaha said there were no heirs, (aole hooilina), and then the conversation dropped.

Kaupaa, wife of Kaunamano, is also relied on as having been present when Kaha denied the existence of a will. Kapena, called to throw discredit on the testimony of Kaha, says that Kaha did admit the making of a will, but that he, Kaha, had declined signing as a witness. Kapena was requested to attend, as a witness, by Mr. Ii, counsel for the widow, to prove a certain conversation had with Kalauhala, a long time ago, in regard to the misconduct of the daughter, Kawahawela. Kaale, one of the sisters, or cousin of the deceased, a witness only introduced in this Court, testifies that she saw this paper shortly after her brother's death, but at the time, besides the name of Kalauhala that of Uhane's, only, appeared at the bottom of the writing ; that Kaha and his son-in-law had quarreled, and that Kaha had not visited Kalauhala's house for a long time previous to his death, but that Uhane, the wife, was there all the time.

Kupaa, husband of Kaale, a witness called only in the lower court, is supposed to corroborate his wife. Kahele showed him the will ; he saw Uhane's name to it, but that she, Kahele, snatched the paper away, and he had no oppor-

tunity to see whether any other signature was there or not.

Such is the gist of the testimony placed before us to discredit the writing in question, as to its authenticity as a will of the late Kalauhala, and from which the inference is to be drawn that the instrument is surreptitious, and a fraud upon the rights of the present appellant in her late father's estate. The position is broadly taken that the paper never was, neither could it have been, written by Kalauhala; or if written, and his own signature appended, as well as the name of Uhane written by him, then, according to the evidence that of Kaha's was placed there some days at least after Kalauhala's death.

So then the wicked fabrication of the writing, if Kalauhala never wrote the paper at all, left his or her work incomplete in the first instance, and Kahele was sufficiently indiscreet as to show the pretended will before it had the requisite number of attestants to make it valid at law; and, on the other hand, should we believe the rest of the writing genuine, a close imitation in adding the name of Kaha, was made by another and a future hand.

The testimony in favor of the genuineness of this writing lies in a narrow compass. Two very respectable witnesses, old acquaintances of the deceased, long familiar with his handwriting, have most implicitly sworn their belief to this writing being that of Kalauhala. It may be that the fraud has been so skillfully perpetrated that they are egregiously deceived. No other writing, letter, or paper, of any kind, save the signatures, seen written by Kanihina, is before us, by which we might institute a comparison; and the signature in the subscription is not, or would not, perhaps, be regarded by adepts as altogether like the writing before us. It stands, however, for us, only a single instance, and is considered by us of the same style of character, though in a smaller hand, as the signature to the alleged will.

True it is that the Legislature, in their wisdom, have

thrown wide the door for an admission of additional testimony in the Appellate Court, but they have not sought, in any way, to trammel the sound legal discretion it becomes our duty to exercise, in judging or weighing the value of that testimony. In the present case, an important portion of the additional testimony comes from witnesses already examined in the Court below, who must have known then, as well as now, the things they state. True, they may not have been led properly to disclose them, but one witness did there speak to certain conversations with one of the attesting witnesses of the will, upon which he is here silent, and goes on to divulge an entirely new portion of evidence, but of the same nature; and the other witnesses, who have testified in this Court for the first time, especially the two sisters, were certainly no strangers to the contestant, and one would suppose that such evidence as they have given would have been freely offered, or, at least, could have been easily attained by this contestant in the lower Court.

We feel that all such additional testimony should be cautiously watched, or else the direst suspicion, from loose and unguarded conversations, could be often thrown upon the most important acts of closing life. It would be an unsafe precedent to set aside such solemn instruments, upon the mere replies of an old man like Kaha, to inquiries prompted by the simple curiosity of this or that person, whom he might happen to meet, unless they were supported by proofs of a more substantial character.

The lack of any provision for the remaining daughter of the deceased, (the present contestant), is only another instance, perhaps, added to those where natural affection has been overborne by the recollection, too unwisely cherished by the parent, of an early waywardness on the part of a child, which has, perhaps, been long since repented of, and followed by a life of contrition.

But under the view we have taken of this case we are

powerless to afford her relief, however much our sense of paternal justice or duty might be wounded. ·

We are, therefore, of opinion that the paper submitted is in the handwriting of Kalauhala, and was made, and intended by him, as, and for, his last will and testament, and that it has been rightfully admitted to probate in the Court below, and that, therefore, the judgment of that Court, in so admitting it, should stand affirmed.